**BROWN KWON & LAM, LLP**
Clara Lam, Esq. (CL6399)
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel.: (718) 971-0326
Fax: (718) 795-1642
clam@bkllawyers.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KRISTEN KERNS,<br><br>                Plaintiff,<br><br>- against -<br><br>AMAZON.COM SERVICES LLC,<br><br>                Defendant. | Case No: 2:21-cv-1790<br><br>COMPLAINT |

Plaintiff KRISTEN KERNS ("Plaintiff"), by and through her undersigned attorneys, hereby files this Complaint against Defendant, AMAZON.COM SERVICES LLC (hereinafter, referred to as "Defendant" or "Amazon") and alleges as follows:

**INTRODUCTION**

1. Plaintiff alleges, pursuant to Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C §§ 12111-12117, as amended, which incorporates, through 42 U.S.C. § 12117(a), the powers, remedies, and procedures set forth in Title VII of the Civil Rights Act of 1964, as amended, that Amazon Defendant engaged in discrimination against Plaintiff on the basis of disability and failed to provide reasonable accommodations. Plaintiff seeks declaratory, injunctive and equitable relief, and monetary damages, including (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

1

2. Plaintiff further alleges, pursuant to the New York State Human Rights Law, New York State Executive Law, Article 15 §§ 290 *et seq.* ("NYSHRL"), that Amazon Defendant engaged in discrimination against Plaintiff on the basis of disability and failed to provide reasonable accommodations. Plaintiff seeks declaratory, injunctive and equitable relief, and monetary damages, including (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

3. Plaintiff further alleges, pursuant to the New York Labor Law ("NYLL") Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, the supporting New York State Department of Labor Regulations, seeking from Defendants: (1) unpaid wages due to time-shaving, (2) statutory penalties, (3) liquidated damages, and (4) attorneys' fees and costs.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337.

5. This Court further has jurisdiction over this matter pusuant to 42 U.S.C. §§ 12117(a) and 2000e-5(f).

6. This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. Plaintiff's state and local law claims against Amazon arise out of the same or substantially similar events and circumstances that give rise to Plaintiff's federal, state and local law claims against Amazon

7. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 and the Americans with Disaibilities Act because a substantial part of the events or omissions giving rise to the claims occurred in this District.

**ADMINISTRATIVE EXHAUSTION**

8. Plaintiff has exhausted THE ADA's administrative requirement of filing a charge with the Equal Employment Opportunity Commission ("EEOC"). On or about July 6, 2020, Plaintiff filed a Charge of Discrimination with the EEOC. On or about January 4, 2021, the EEOC issued Plaintiff's Notice of Right to Sue, which is attached hereto as **Exhibit A**. The herein lawsuit was filed within ninety (90) days of the receipt of Plaintiff's Notice of Right to Sue.

**PARTIES**

*Plaintiff*

**KRISTEN KERNS**

9. Plaintiff is an adult who resides in Suffolk County, New York.

10. Plaintiff was a covered employee within the meaning of the ADA, NYSHRL and NYLL.

11. Plaintiff retained Brown Kwon & Lam, LLP to represent Plaintiff in this action and have agreed to pay the firm a reasonable fee for its services.

*Defendants*

12. At all relevant times, Defendant owned and operated the e-commerce company Amazon.com. Prior to on or about January 13, 2020, Amazon owned and operated Amazon.com through AMAZON.COM SERVICES, INC. AMAZON.COM SERVICES, INC. operated as the former business entity that employed Plaintiff and is a predecessor company to Defendant AMAZON.COM SERVICES LLC. On or about January 13, 2020, AMAZON.COM SERVICES, INC. was deemed inactive.

13. At all relevant times, AMAZON.COM SERVICES, INC. was a foreign business corporation organized under the laws of the State of Delaware, with a principal place of business

located at 410 Terry Avenue N, Seattle, Washington 98109, and an address for service of process located at c/o Corporation Service Company, 80 State Street, Albany, New York 12207.

14. Defendant AMAZON.COM SERVICES LLC is a successor in interest to AMAZON.COM SERVICES, INC. Defendant AMAZON.COM SERVICES LLC (i) continued to operate the same business, (ii) offered employment to the same employees, (iii) used the same supervisory personnel, and (iv) offered the same jobs under substantially the same working conditions. Prior to January 2020, Plaintiff was provided with payroll through AMAZON.COM SERVICES, INC. Starting in or around January 2020, Plaintiff was provided with payroll through Defendant AMAZON.COM SERVICES LLC.

15. At all relevant times, Defendant jointly employed Plaintiff.

16. At all relevant times, each Defendant had substantial control over Plaintiff's working conditions, and over the unlawful policies and practices alleged herein.

17. At all relevant times, Defendant was and continues to be an employer within the meaning of the ADA, NYSHRL and NYLL.

### *AMAZON.COM SERVICES LLC*

18. Defendant AMAZON.COM SERVICES LLC is a foreign limited liability company organized under the laws of the State of Delaware with an address for service of process located at c/o Corporation Service Company, 80 State Street, Albany, New York 12207.

19. At all relevant times, AMAZON.COM SERVICES LLC has done business as Amazon.

20. AMAZON.COM SERVICES LLC is a covered employer within the meaning of the ADA, NYSHRL and NYLL, and, at all relevant times, has employed Plaintiff.

21. At all relevant times, AMAZON.COM SERVICES LLC has maintained control, oversight, and direction over Plaintiff, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

22. At all relevant times, either AMAZON.COM SERVICES, INC. or AMAZON.COM SERVICES LLC is listed as the payor on pay stubs received by Plaintiff.

## STATEMENT OF FACTS

23. From in or around February 2018, Plaintiff was employed by Defendant as an Associate at one of Amazon's warehouses, "DNY4 Facility", located at 201 Grumman Road W, Bethpage, New York 11714.

24. At all relevant times, Plaintiff has been diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD").

25. In or around February 2020, Plaintiff contacted her direct supervisor, Linoy Bernard and requested for a brief accommodation for her disability since she was in the process of switching medical providers before she could refill her ADHD medication, and as such, Plaintiff was unmedicated at the time.

26. Although Plaintiff was cross-trained to work in all associate-level departments in the warehouse, Plaintiff was working in Amazon's stowing department in or around February 2020. Due to the detailed-oriented task of stowing, Plaintiff requested to be temporarily transferred to a different department so that she would be able to work while she was waiting to refill her ADHD medication. Due to her disability, without her medication, Plaintiff had a mental limitation that made it difficult for her to perform at the same level as when she was able to take her ADHD medicine.

27. At all relevant times, all associates were cross-trained and paid the same hourly rate, regardless of which department they were employed to work.

28. However, Linoy Bernard informed Plaintiff that she spoke to her supervisors regarding Plaintiff's request for an accommodation, and responded that they discussed Plaintiff's request, but that Plaintiff "had to improve her job performance in order for them to reassign her elsewhere."

29. After being denied her request by Linoy Bernard, Plaintiff spoke to another manager, Asif Essack, regarding her disability-related accommodation request because other associates were able to regularly and easily change their departments upon request, even when such transfer requests were unrelated to any disability-based accommodation.

30. In fact, during the same week that Plaintiff requested for a temporary transfer to a different department, another employee was transferred from the stowing department after they complained that they did not want to do the work and requested to be transferred to work at the dock.

31. Plaintiff complained to Asif Essack that she would be able to work more productively if transferred to a different department that did not require intensive detail-oriented work while she was waiting to refill her medication. However, Asif Essack also refused to transfer Plaintiff to a different department, citing that Plaintiff's job performance needed to improve before they will consider transferring her to a different department.

32. During the week in which Plaintiff requested for a temporary transfer to a different department, Plaintiff received multiple warnings and write-ups for poor performance in the stowing department. After Plaintiff received a warning and a write-up, Plaintiff met with all of her managers and again informed them that she was only underperforming since she had yet to refill her medication, and asked again to be reassigned to a different position until she was able to refill her medicine. Plaintiff told them "have me on top," "have me on the dock," and "I know how to

do everything." However, their only response was that "you need to get your numbers up" and that she was not permitted to move until she performed more efficiently.

33. During the week in which Plaintiff requested for a temporary transfer to a different department, Plaintiff spoke with a representative from human resources. Plaintiff requested for a disability-related accommodation and their only response was that "if you want to be moved, then you have to improve your numbers."

34. None of the supervisors, managers or human resource representatives at DNY4 informed Plaintiff that she needed to contact anyone else at Amazon regarding her disability-related accommodation request. At all times, their only response was that if Plaintiff wanted to transfer departments, she needed to improve her daily productivity.

35. Following Plaintiff's third consecutive write-up within the week, another manager, James Young, terminated Plaintiff's employment because managers reviewed productivity on a daily basis and the lowest performing employees were terminated. Plaintiff was terminated on or about February 19, 2020.

36. At all times, Defendant was aware of Plaintiff's disability. In or around March 2019, Plaintiff was previously terminated due to disability-related performance issues. After Plaintiff submitted medical documentation regarding her disability, Amazon's human resources retracted their termination and placed Plaintiff on leave. In or around April 2019, Plaintiff returned back to work after a brief accommodation.

37. Plaintiff's submitted medical documentation in 2019 makes clear that she had a known disability and that she would be able to return to her job if she took her medication. In or around February 2020, Plaintiff was in the process of switching her medical provider to better treat her disability. As such, Plaintiff was without her medication for approximately a week. During the

week Plaintiff was without her medication, Plaintiff made multiple requests to be temporarily transferred from stowing, to any other Amazon department at DNY4, all of which she was cross-trained for, as her disability made it difficult for her to perform her duties as productively as when she was taking her medication. However, none of the supervisors, managers, or human resource representatives at Amazon engaged in an individualized, interactive process regarding her request for a reasonable accommodation. Instead, Amazon once against terminated Plaintiff on the basis of her disability and failed to provide a reasonable accommodation.

38. Following Plaintiff's termination, Plaintiff emailed Jeff Bezos regarding DNY4's discriminatory practices and noncompliance with employment regulations. On or about March 11, 2020, Plaintiff received a response from Defendant confirming her termination and that she was ineligible for rehire.

*     *     *

39. At the start of Plaintiff's employment, Plaintiff was compensated at an hourly rate of $12.75 per hour, with an additional $0.50 per hour for night differential pay, for a total of $13.25 per hour. By the end of Plaintiff's employment with Defendant in or around February 2020, Plaintiff's rate of pay was an hourly rate of $15.95 per hour, with an additional $0.50 per hour for night differential pay, for a total of $16.45 per hour.

40. At the start of Plaintiff's employment, Plaintiff was scheduled to work and did work from 11:00pm until 7:00am, for three (3) days per week, working a total of at least twenty-four (24) hours per week. From in or around Fall 2018 until in or around October 2019, Plaintiff was scheduled to work and did work from 12:00am until 6:45am, for four (4) days per week, working a total of at least twenty-seven (27) hours per week. In or around October 2019, Plaintiff was

scheduled to work and did work from 6:15pm until 4:45am, for three (3) days per week, for a total of at least thirty-one and a half (31.5) hours per week.

41. On a weekly basis, Plaintiff worked additional hours as managers would offer employees to work additional hours at the end of their shifts if Defendant was busier than expected and there was remaining workload at the end of the shift. Amazon was always busier than expected and managers always offered additional work hours for employees to manage the increasing output of orders at the DNY4 Facility. Plaintiff worked a range of two (2) to four (4) additional hours each day she agreed to work additional hours. On a few occasions, such additional hours worked per week resulted in Plaintiff working over forty (40) hours per workweek.

42. At all relevant times, Plaintiff was not compensated for all of her hours worked. At all relevant times, Plaintiff and other employees regularly agreed to work additional hours due to the nonstop, busy workload at Amazon. As a result, Plaintiff regularly worked an additional two (2) to four (4) hours per workday throughout the week. However, Plaintiff and other employees were not paid for all of their hours worked, resulting in unpaid wages, and on occasion, unpaid overtime wages during weeks in which they worked over forty (40) hours.

43. At all relevant times, Plaintiff and other employees volunteered to work additional hours for Amazon, but Amazon's managers at the DNY4 Facility regularly clocked out Plaintiff and other employees while they were still working on-the-clock for Amazon. Managers regularly asked Plaintiff to clock-out because she was working too many hours and that her additional hours worked would not reflect well on the managers' productivity for their promotions. Despite the managers' request for her to clock-out, Plaintiff would not clock-out until the end of her actual hours worked, but at least every other week, Plaintiff found that she was already clocked-out by a manager prior to the end of her actual shift. Due to Amazon's focus on productivity and their

promotion requirements, managers at Amazon were incentivized to time-shave Plaintiff and other employees by clocking them out prior to the end of their actual hours worked to reduce the number of hours worked by the labor force in order to increase their productivity numbers. There was also a policy to disallow overtime hours, so managers regularly reviewed employees' total hours worked and clocked employees out if they were reaching forty (40) hours per week. Due to Defendant's policies, Plaintiff was not compensated for at least half-an-hour, for every other week of her employment at Amazon. Based on her conversations with other employees at Amazon, they also complained of being clocked-out by managers while they were still working.

44. Defendant's time-shaving policies and failure to pay employees for all compensable hours worked resulted in a systematic failure to pay the full and proper wages for all hours worked by Plaintiff at Amazon.

45. Throughout her employment with Defendant, Plaintiff did not receive proper notices of pay rate or pay day from Defendants, as required under the NYLL.

46. At all relevant times, Plaintiff did not receive proper wage statements from Defendant. Specifically, the wage statements were improper because they failed to accurately reflect Plaintiff's actual number of hours worked.

47. Defendant knowingly and willfully operated their business with a policy of failing to pay the full and proper wages to Plaintiff for all hours worked, in violation of the NYLL.

48. Defendant knowingly and willfully operated their business with a policy of not providing proper wage notices to Plaintiff pursuant to the requirements of the NYLL.

49. Defendant knowingly and willfully operated their business with a policy of not providing proper wage statements to Plaintiff pursuant to the requirements of the NYLL.

## STATEMENT OF CLAIMS

### FIRST CAUSE OF ACTION
### Discrimination in Violation of the ADA

50. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

51. Plaintiff is an employee and a protected person within the meaning of the ADA and Defendant is a covered employer under the ADA.

52. At all relevant times, Defendant employed at least fifteen (15) employees.

53. Defendant violated Plaintiff's statutorily protected rights under the ADA by engaging in discriminatory employment practices.

54. Title I of the ADA prohibits discrimination in employment "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Defendant discriminated against Plaintiff in violation of the ADA by subjecting Plaintiff to disparate treatment, not making reasonable accommodations, and ultimately terminating her employment on the basis of her disability. Defendant fostered, condoned, accepted, ratified and/or otherwise failed to prevent or to remedy discriminatory and hostile work conditions, in violation of the ADA.

55. As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the ADA, Plaintiff has suffered, and continues to suffer, economic harm for which she is entitled to an award of monetary damages and other relief.

56. As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the ADA, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress

11

and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

57. Defendant's unlawful discriminatory and retaliatory conduct was intentional, malicious, willful, and/or in reckless disregard of Plaintiff's protected rights under the ADA, for which she is entitled to an award of punitive damages.

58. Due to Defendant's violations of the ADA, namely, employment discrimination on the basis of disability, Plaintiff is entitled to recover from Defendant: (1) economic damages; (2) compensatory damages; (3) punitive damages; and (4) attorneys' fees and costs of bringing this action.

## SECOND CAUSE OF ACTION
**Failure to Provide Reasonable Accommodation in Violation of the ADA**

59. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

60. The ADA requires Defendant to engage in a mandatory interactive process to identify a reasonable accommodation for employees with a disability.

61. Defendant failed to provide a reasonable accommodation for Plaintiff's disability by refusing to engage in the interactive process in good faith to identify a reasonable accommodation for Plaintiff's conditions/disabilities.

62. Discrimination under the ADA includes an employer's failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." 42 U.S.C. § 12112(b)(5)(A). Defendant violated Plaintiff's statutorily protected rights under the ADA by being aware of and failing to reasonably accommodate Plaintiff's request for an accommodation based on her disability. Defendant was aware of Plaintiff's disability, Plaintiff requested a reasonable accommodation

related to her disability that would not impose an undue hardship on Defendant's business, and Defendant refused to provide an accommodation for her.

63. A reasonable accommodation may include, but is not limited to, "job restructuring, part-time or modified work schedules, reassignment to a vacant position . . ." among others. 42 U.S.C. § 12111(9)(B). At minimum, Defendant was required to engage in an interactive process regarding Plaintiff's request for a reasonable accommodation but Defendant failed to do so.

64. Defendant's conduct was intentional, malicious, willful or in reckless disregard of Plaintiff's protected rights under the ADA.

65. As a result of Defendant's unlawful employment practice, Plaintiff sustained injury, including economic damages, the past and future emotional distress, and the costs of bringing this action.

66. Due to Defendant's violations of the ADA, namely, employment discrimination on the basis of disability, Plaintiff is entitled to recover from Defendant: (1) an injunction ordering Defendant to cease its discriminatory practices as described herein; (2) economic damages; (3) compensatory damages; (4) punitive damages; and (5) attorneys' fees.

## THIRD CAUSE OF ACTION
### Discrimination in Violation of the NYSHRL

67. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

68. Plaintiff is an employee and a protected person within the meaning of the NYSHRL and Defendant is a covered employer under the NYSHRL.

69. Defendant violated Plaintiff's statutorily protected rights under the NYSHRL, New York Executive Law, Article 15 §§ 290 *et seq.*, by engaging in discriminatory employment

13

practices, not making reasonable accommodations, and ultimately terminating her employment on the basis of her disability.

70. Defendant's conduct was intentional, malicious, willful or in reckless disregard of Plaintiff's protected rights under the NYSHRL.

71. As a result of Defendant's unlawful employment practice, Plaintiff sustained injury, including economic damages, the past and future emotional distress, and the costs of bringing this action.

72. Due to Defendant's violations of the NYSHRL, namely, employment discrimination on the basis of disability, Plaintiff is entitled to recover from Defendants: (1) an injunction ordering Defendants to cease its discriminatory practices as described herein; (2) economic damages; (3) compensatory damages; (4) punitive damages; and (5) attorneys' fees.

## FOURTH CAUSE OF ACTION
**Failure to Provide Reasonable Accommodation in Violation of the NYSHRL**

73. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

74. Plaintiff is an employee and a protected person within the meaning of the NYSHRL and Defendant is a covered employer under the NYSHRL.

75. Under the NYSHRL, "[i]t shall be an unlawful discriminatory practice for an employer . . . to refuse to provide reasonable accommodations to the known disabilities . . . of an employee." NYSHRL § 296(3)(a). Defendant violated Plaintiff's statutorily protected rights under the NYSHRL, New York Executive Law, Article 15 §§ 290 *et seq.*, by being aware of and failing to reasonably accommodate Plaintiff's request for an accommodation based on her disability. Defendant was aware of Plaintiff's disability, Plaintiff requested a reasonable accommodation

related to her disability that would not impose an undue hardship on Defendant's business, and Defendant refused to provide an accommodation for her.

76. At minimum, Defendant was required to engage in an individualized and interactive process regarding Plaintiff's request for a reasonable accommodation but Defendant failed to do so.

77. Defendant's conduct was intentional, malicious, willful or in reckless disregard of Plaintiff's protected rights under the NYSHRL.

78. As a result of Defendant's unlawful employment practice, Plaintiff sustained injury, including economic damages, the past and future emotional distress, and the costs of bringing this action.

79. Due to Defendant's violations of the NYSHRL, namely, employment discrimination on the basis of disability, Plaintiff is entitled to recover from Defendants: (1) an injunction ordering Defendants to cease its discriminatory practices as described herein; (2) economic damages; (3) compensatory damages; (4) punitive damages; and (5) attorneys' fees.

## FIFTH CAUSE OF ACTION
## Violation of the New York Labor Law

80. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

81. At all times relevant, Plaintiff was an employee of Defendant, and Defendant has been an employer of Plaintiff within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

82. Defendant failed to pay Plaintiff wages for all hours worked, including overtime wages to which she was entitled under the NYLL and the supporting New York State Department of Labor Regulations.

15

83. Defendant failed to pay Plaintiff the full and proper wages for all hours worked due to Defendant's time-shaving of employees' hours worked.

84. Defendant failed to pay Plaintiff the full and proper wages for all hours worked.

85. Defendant failed to furnish Plaintiff with proper wage notices as required by NYLL, Article 6, § 195(1), in English or in the language identified by each employee as their primary language, a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.

86. Defendant failed to furnish Plaintiff with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

87. Defendant failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiff as required by the NYLL and the supporting New York State Department of Labor Regulations.

88. Defendant failed to properly disclose or apprise Plaintiff of her rights under the NYLL and the supporting New York State Department of Labor Regulations.

89. As a result of Defendant's willful violations of the NYLL, Plaintiff is entitled to recover from Defendant her unpaid wages, including overtime wages, due to time-shaving of employees' hours worked, liquidated damages, reasonable attorneys' fees and costs, interests, and other compensation in accordance with the NYLL.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

a. An order awarding relief for Defendant's discriminatory conduct, including but not limited to economic, compensatory and punitive damages;

b. Pre-judgment and post-judgment interest;

c. Reasonable attorneys' fees and costs of this action;

d. A declaratory judgment that the practices complained of herein are unlawful under the ADA and NYSHRL;

e. An award of unpaid wages resulting from Defendant's failure to pay wages for all hours worked, in violation of the NYLL;

f. An award of liquidated damages as a result of Defendant's willful failure to pay full and proper wages for all hours worked, pursuant to the NYLL;

g. Statutory penalties for Defendant's failure to provide Plaintiff with proper wage notices, as required by the NYLL;

h. Statutory penalties for Defendant's failure to provide Plaintiff with proper wage statements, as required by the NYLL;

i. An injunction against Defendant and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law,

from engaging in each of the unlawful practices, policies and patterns set forth herein; and

j. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated:  April 1, 2021

Respectfully submitted,

**BROWN KWON & LAM, LLP**

By:   */s/ Clara Lam*

Clara Lam, Esq. (CL6399)
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel.: (718) 971-0326
Fax: (718) 795-1642
clam@bkllawyers.com
*Attorneys for Plaintiff*